IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

No. 3:21-cv-356

FEDS FOR MEDICAL FREEDOM, *ET AL.*, *PLAINTIFFS*,

v.

JOSEPH R. BIDEN, JR., *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The plaintiffs have moved the court to preliminarily enjoin the enforcement of two executive orders by the President. The first, Executive Order 14042, is already the subject of a nationwide injunction. Because that injunction protects the plaintiffs from imminent harm, the court declines to enjoin the first order. The second, Executive Order 14043, amounts to a presidential mandate that all federal employees consent to vaccination against COVID-19 or lose their jobs. Because the President's authority is not that broad, the court will enjoin the second order's enforcement.

The court notes at the outset that this case is not about whether folks should get vaccinated against COVID-19—the court believes they should. It

is not even about the federal government's power, exercised properly, to mandate vaccination of its employees. It is instead about whether the President can, with the stroke of a pen and without the input of Congress, require millions of federal employees to undergo a medical procedure as a condition of their employment. That, under the current state of the law as just recently expressed by the Supreme Court, is a bridge too far.

# I

# Background

In response to the COVID-19 pandemic, the Biden Administration has put out four mandates requiring vaccination in various contexts. Earlier this month, the Supreme Court ruled on challenges to two of those mandates. For one, a rule issued by the Occupational Safety and Health Administration (OSHA) concerning businesses with 100 or more employees, the Court determined the plaintiffs would likely succeed on the merits and so granted preliminary relief. *See Nat'l Fed'n Indep. Bus. v. OSHA*, 595 U.S. \_\_\_ (2022) [hereinafter *NFIB*]. For the second, a rule issued by the Secretary of Health and Human Services concerning healthcare facilities receiving Medicare and Medicaid funding, the Court allowed the mandate to go into effect. *See Biden v. Missouri*, 595 U.S. \_\_\_ (2022).

In this case, the plaintiffs challenge the other two mandates. One compels each business contracting with the federal government to require its employees to be vaccinated or lose its contract. Exec. Order No. 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors, 86 Fed. Reg. 50,985 (Sept. 9, 2021). Because that order has been enjoined nationwide, *Georgia v. Biden*, No. 1:21-CV-163, 2021 WL 5779939, at *12 (S.D. Ga. Dec. 7, 2021), this court declines to grant any further preliminary relief. The other mandate requires that all federal employees be vaccinated—or obtain a religious or medical exemption—or else face termination. *See* Exec. Order No. 14043, Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, 86 Fed. Reg. 50,989 (Sept. 9, 2021) [hereinafter federal-worker mandate].

The federal-worker mandate was issued last year on September 9. At first, federal agencies were to begin disciplining non-compliant employees at the end of November. But as that date approached, the government announced that agencies should wait until after the new year. *See* Rebecca Shabad, et. al, *Biden administration won't take action against unvaccinated federal workers until next year*, NBC News (Nov. 29, 2021).[1] The court

---

[1] *Available at* https://www.nbcnews.com/politics/white-house/biden-administration-delay-enforcement-federal-worker-vaccine-mandate-until-next-n1284963.

understands that the disciplining of at least some non-compliant employees is now imminent.

Before this case, the federal-worker mandate had already been challenged in several courts across the country, including this one. *See Rodden v. Fauci*, No. 3:21-CV-317, 2021 WL 5545234 (S.D. Tex. Nov. 27, 2021). Most of those challenges have fallen short due to procedural missteps by the plaintiffs or a failure to show imminent harm. *See, e.g.*, *McCray v. Biden*, No. CV 21-2882 (RDM), 2021 WL 5823801, at *5–9 (D.D.C. Dec. 7, 2021) (denied because plaintiff tried to directly enjoin the President and did not have a ripe claim).

This case was filed by Feds for Medical Freedom, Local 918, and various individual plaintiffs on December 21. Dkt. 1. The next day, the plaintiffs moved for a preliminary injunction against both mandates. *See* Dkt. 3. At a scheduling conference on January 4, the court announced it would not consider preliminary relief on Executive Order No. 14042 while the nationwide injunction was in effect. Dkt. 14, Hrg. Tr. 7:8–8:11. The court then convened a telephonic oral argument on January 13, shortly before the Supreme Court ruled on the OSHA and healthcare-worker mandates. *See* Dkt. 31. At that hearing, both sides agreed that the soonest any plaintiff might face discipline would be January 21. Dkt. 31, Hrg. Tr. 4:11–5:5.

## II

## Jurisdiction

The government[2] mounts two challenges to the court's jurisdiction: that the Civil Service Reform Act precludes review and that the plaintiffs' claims are not ripe.

**1. Civil Service Reform Act**

"Under the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 *et seq.*, certain federal employees may obtain administrative and judicial review of specified adverse employment actions." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012). The government maintains that the CSRA, by providing an exclusive means of relief, precludes the plaintiffs' claims in this case. Dkt. 21 at 8–12. Specifically, the government argues that by challenging the vaccine mandate, the plaintiffs are disputing a "significant change in duties, responsibilities, or working conditions," which is an issue exclusively within the province of the CSRA. *Id.* at 11 (quoting 5 U.S.C. § 2302(a)(2)(A)(xii)).

Unfortunately, the CSRA does not define "working conditions." But the interpretation that courts have given that term would not encompass a requirement that employees subject themselves to an unwanted vaccination. Rather, "these courts have determined that the term 'working conditions'

---

[2] Throughout this memorandum opinion, the court will refer to all the defendants, collectively, as "the government."

generally refers to the daily, concrete parameters of a job, for example, hours, discrete assignments, and the provision of necessary equipment and resources." *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 367 (D.D.C. 2020).

The government also argues that the CSRA applies "to hypothetical removals or suspensions." Dkt. 21 at 11 (citing 5 U.S.C. § 7512). But, contrary to the government's suggestion, the statute says nothing about "hypothetical" adverse employment actions. *See* 5 U.S.C. § 7512. Rather, it applies to actual discipline, whether that be firings, suspensions, reductions in pay, or furloughs. *See id.* Indeed, neither the Merit Systems Protection Board (the administrative body charged with implementing the CSRA) nor the Federal Circuit (which hears CSRA appeals) has jurisdiction until there is an actual adverse employment action.[3] *Esparraguera v. Dep't of the Army*, 981 F.3d 1328, 1337–38 (Fed. Cir. 2020).

---

[3] The government relies on two Fifth Circuit cases as support for its contention that the CSRA applies to the plaintiffs' claims in this case. But in both of those cases, unlike this one, the plaintiffs had already suffered an adverse employment action and were not seeking prospective relief. *See Rollins v. Marsh*, 937 F.2d 134, 136 (5th Cir. 1991); *Broadway v. Block*, 694 F.2d 979, 980–81 (5th Cir. 1982). Moreover, the D.C. Circuit has held repeatedly that pre-enforcement challenges to government-wide policies—such as the mandates at issue here—do not fall within the scheme of the CSRA. *See, e.g., Nat'l Treasury Emps. Union v. Devine*, 733 F.2d 114, 117 n.8 (D.C. Cir. 1984) (allowing "preenforcement judicial review of rules" over CSRA objections); *Nat'l Fed'n of Fed. Emps. v. Weinberger*, 818 F.2d, 935, 940 n.6 (D.C. Cir. 1987) (discussing the right of federal employees

Finally, central to the Supreme Court's holding in *Elgin* was the idea that employees must be afforded, whether under the CSRA or otherwise, "meaningful review" of the discipline they endure. *Elgin*, 567 U.S. at 10. But requiring the plaintiffs to wait to be fired to challenge the mandate would compel them to "to bet the farm by taking the violative action before testing the validity of the law." *Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010) (cleaned up). As the Fifth Circuit has held, the choice between one's "job(s) and their jab(s)" is an irreparable injury. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). To deny the plaintiffs the ability to challenge the mandate pre-enforcement, in district court, is to deny them meaningful review. The CSRA does not deprive the court of jurisdiction over these claims.

## 2. Ripeness

The government also argues that the court lacks jurisdiction because none of the plaintiffs' claims are ripe. *See* Dkt. 21 at 12–14. Some of the plaintiffs' claims—those who have asserted a religious or medical exemption from the mandate—are indeed at least arguably unripe. *See Rodden*, 2021

---

to seek injunctive relief through the courts where agencies cannot act); *Nat'l Treasury Emps. Union v. Horner*, 854 F.2d 490, 497 (D.C. Cir. 1988) (allowing judicial review for employees who did not have access to the Merit Systems Protection Board).

WL 5545234, at *2 (the claims of plaintiffs whose exemption claims remain unresolved are as yet "too speculative").[4] But the government insists that even plaintiffs who have not claimed exemptions do not have ripe claims because "federal employees have ample opportunities to contest any proposed suspension or removal from employment through a multi-step administrative process." Dkt. 21 at 13.

The government pushes the ripeness doctrine too far. Absent a valid exemption request, at least some plaintiffs face an inevitable firing. *See, e.g.*, Dkt. 35, Exhibit 39 at 4 (federal employer claiming that employee's failure to provide evidence that he is fully vaccinated "will not be tolerated"). The court does not have to speculate as to what the outcome of the administrative process will be. Many plaintiffs have not only declined to assert any exemption but have also submitted affidavits swearing they will not. The court takes them at their word. Many of these plaintiffs already have received letters from their employer agencies suggesting that suspension or termination is imminent, have received letters of reprimand, or have faced

---

[4] There is some dispute as to whether some plaintiffs who have asked for an exemption are in danger of being disciplined even while their exemption requests are still pending. Though in *Rodden* this court ruled that plaintiffs who had claimed exemptions did not yet face imminent harm, that ruling was based largely on the specific representations of the agencies for which those plaintiffs worked that there would be no discipline before the exemption claims were resolved. But because there are plaintiffs here who have not claimed exemptions, the court need not sort out that dispute.

other negative consequences. Dkt. 3, Exhibits 15–18, 20), 26–27. To be ripe, the threat a plaintiff faces must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). And in the context of preliminary relief, "a plaintiff must show that irreparable injury is not just possible, but likely." *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2176 (2020) (Thomas, J., dissenting). Because at least some of the plaintiffs have met that burden, the government's ripeness allegations are unfounded. The court has jurisdiction.

## III

## Injunctive Relief

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

1. **Threat of irreparable injury**

Because injunctive relief is an extraordinary tool to be wielded sparingly, the court should be convinced the plaintiffs face irreparable harm

before awarding it. *See Booth v. Galveston Cnty*, No. 3:18-CV-00104, 2019 WL 3714455, at *7 (S.D. Tex. Aug. 7, 2019), *R&R adopted as modified*, 2019 WL 4305457 (Sept. 11, 2019). The court is so convinced.

As noted above, the Fifth Circuit has already determined that the Hobson's choice employees face between "their job(s) and their jab(s)" amounts to irreparable harm. *OSHA*, 17 F.4th at 618. Regardless of what the conventional wisdom may be concerning vaccination, no legal remedy adequately protects the liberty interests of employees who must choose between violating a mandate of doubtful validity or consenting to an unwanted medical procedure that cannot be undone.

The Fifth Circuit has also held that the reputational injury and lost wages employees experience when they lose their jobs "do not necessarily constitute irreparable harm." *Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297, 304 (5th Cir. 2017). But when an unlawful order bars those employees from significant employment opportunities in their chosen profession, the harm becomes irreparable. *Id.*

The plaintiffs have shown that in the absence of preliminary relief, they are likely to suffer irreparable harm.

## 2. Likelihood of success on the merits

The court does not decide today the ultimate issue of whether the federal-worker mandate is lawful. But to issue a preliminary injunction, it must address whether the claim is likely to succeed on the merits. The plaintiffs' arguments fall into two categories: (1) that the President's action was *ultra vires* as there is no statute authorizing him to issue the mandate and the inherent authority he enjoys under Article II is not sufficient, and (2) that the agencies' implementation of his order violates the Administrative Procedures Act (APA).[5] Each argument will be addressed in turn.

### a. *Ultra vires*

- **Statutory authority**

The government points to three statutory sources for the President's authority to issue the federal-worker mandate: 5 U.S.C. §§ 3301, 3302, and

---

[5] The government maintains that the plaintiffs cannot challenge the mandate as *ultra vires*, leaving the APA as their only vehicle to attack it. An action is not *ultra vires*, the government argues, unless the President "acts 'without any authority whatever.'" Dkt. 21 at 25 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 n.11 (1984) (cleaned up)). "Because the 'business' of the 'sovereign' certainly encompasses issuing [this] kind of directive," the government contends, there is no room for *ultra vires* review. Dkt. 21 at 25–26. But the government's argument misinterprets the law concerning judicial review of presidential action: executive orders are reviewable outside of the APA. *See Franklin v. Massachusetts*, 505 U.S. 788, 828 (1992) (Scalia, J., concurring) ("[r]eview of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive"); *see also Halderman*, 465 U.S. at 101 n.11 ("[A]n *ultra vires* claim rests on the officer's lack of delegated power.") (citation omitted).

7301. None of them, however, does the trick.

Section 3301, by its own terms, applies only to "applicants" seeking "admission . . . into the civil service." 5 U.S.C. § 3301. The statutory text makes no reference to current federal employees (like the plaintiffs). And other courts have already held that whatever authority the provision does provide is not expansive enough to include a vaccine mandate. *See, e.g., Georgia*, 2021 WL 5779939, at *10; *Kentucky v. Biden*, No. 3:21-CV-55, 2021 WL 5587446, at *7 (E.D. Ky. Nov. 30, 2021), *aff'd*, No. 21-6147, 2022 WL 43178 (6th Cir. Jan. 5, 2022).

Section 3302 provides that the "President may prescribe rules governing the competitive service." 5 U.S.C. § 3302. That language sounds broad until one reads the next sentence: "The rules shall provide, as nearly as conditions of good administration warrant, for . . . (1) necessary exceptions of positions from the competitive service; and (2) necessary exceptions from the provisions of sections 2951, 3304(a), 3321, 7202, and 7203 of this title." *Id*. When the cross-referenced provisions are checked, it becomes evident that the "rules" the President may prescribe under § 3302 are quite limited. For example, he may exempt certain employees from civil-service rules and from certain reports and examinations, and he may prohibit marital and

disability discrimination within the civil service. But not even a generous reading of the text provides authority for a vaccine mandate.

The final statutory authority on which the government relies is § 7301, which provides in its entirety: "The President may prescribe regulations for the conduct of employees in the executive branch." 5 U.S.C. § 7301. According to the government, "the act of becoming vaccinated" is "plainly 'conduct'" within the meaning of the statute. Dkt. 21 at 27.

But the plaintiffs argue that rather than regulate "conduct," the federal-worker mandate compels employees to assume a vaccinated "status," and "one that is untethered to job requirements, no less." Dkt. 3 at 12. Moreover, the plaintiffs contend, even if becoming vaccinated is "conduct," it is not "workplace conduct," which is all that § 7301 reasonably authorizes the President to regulate. Dkt. 23 at 12.

Assuming that getting vaccinated is indeed "conduct," the court agrees with the plaintiffs that under § 7301, it must be *workplace* conduct before the President may regulate it. Any broader reading would allow the President to prescribe, or proscribe, certain private behaviors by civilian federal workers outside the context of their employment. Neither the plain language of § 7301 nor any traditional notion of personal liberty would tolerate such a sweeping grant of power.

So, is submitting to a COVID-19 vaccine, particularly when required as a condition of one's employment, workplace conduct? The answer to this question became a lot clearer after the Supreme Court's ruling in *NFIB* earlier this month. There, the Court held that the Occupational Safety and Health Act of 1970, 29 U.S.C. § 15 *et seq.*, allows OSHA "to set workplace safety standards," but "not broad public health measures." *NFIB*, 595 U.S. \_\_\_\_ slip op. at 6. Similarly, as noted above, § 7301 authorizes the President to regulate the *workplace* conduct of executive-branch employees, but not their conduct in general. *See* 5 U.S.C. § 7301. And in *NFIB*, the Supreme Court specifically held that COVID-19 is *not* a workplace risk, but rather a "universal risk" that is "no different from the day-to-day dangers that all face from crime, air pollution, or any number of communicable diseases." *NFIB*, 595 U.S. \_\_\_\_ slip op. at 6. Accordingly, the Court held, requiring employees to get vaccinated against COVID-19 is outside OSHA's ambit. *Id.* Applying that same logic to the President's authority under § 7301 means he cannot require civilian federal employees to submit to the vaccine as a condition of employment.

The President certainly possesses "broad statutory authority to regulate executive branch employment policies." *Serv. Emps. Int'l Union Loc. 200 United v. Trump*, 419 F. Supp. 3d 612, 621 (W.D.N.Y. 2019), *aff'd*,

975 F.3d 150 (2d Cir. 2020). But the Supreme Court has expressly held that a COVID-19 vaccine mandate is not an employment regulation. And that means the President was without statutory authority to issue the federal-worker mandate.

- **Constitutional authority**

Though the government argues §§ 3301, 3302, and 7301 evince the authority the President wields to regulate the federal workforce, it also contends that statutory authorization is wholly unnecessary. Dkt. 21 at 26–27. Article II, the government maintains, gives the President all the power he needs. *Id.* But the government points to no example of a previous chief executive invoking the power to impose medical procedures on civilian federal employees. As Chief Judge Sutton of the Sixth Circuit has noted, no arm of the federal government has ever asserted such power. *See In re MCP No. 165, OSHA Interim Final Rule: COVID-19 Vaccination & Testing*, 20 F.4th 264, 289 (6th Cir. 2021) (Sutton, C.J., dissenting from denial of initial rehearing en banc) ("A 'lack of historical precedent' tends to be the most 'telling indication' that no authority exists.").

The government relies on *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010), but that case concerns certain "Officers of the United States who exercise significant authority

pursuant to the laws of the United States," not federal employees in general. *Id.* at 486 (cleaned up). Moreover, the *Free Enterprise Fund* Court itself acknowledges that the power Article II gives the President over federal officials "is not without limit." *Id.* at 483.

And what is that limit? As the court has already noted, Congress appears in § 7301 to have limited the President's authority in this field to workplace conduct. But if the court is wrong and the President indeed has authority over the conduct of civilian federal employees in general—in or out of the workplace—"what is the logical stopping point of that power?" *Kentucky v. Biden*, No. 21-6147, 2022 WL 43178, at *15 (6th Cir. Jan. 5, 2022). Is it a "*de facto* police power"? *Id.* The government has offered no answer—no limiting principle to the reach of the power they insist the President enjoys. For its part, this court will say only this: however extensive that power is, the federal-worker mandate exceeds it.

### b. APA review

The plaintiffs argue that even if the President had the authority to issue the federal-worker mandate, the agencies have violated the APA by arbitrarily and capriciously implementing it. Dkt. 3 at 16–25. While the court need not reach this question, as it has already determined the federal-worker mandate exceeds the President's authority, the government correctly argues

pursuant to the laws of the United States," not federal employees in general. *Id.* at 486 (cleaned up). Moreover, the *Free Enterprise Fund* Court itself acknowledges that the power Article II gives the President over federal officials "is not without limit." *Id.* at 483.

And what is that limit? As the court has already noted, Congress appears in § 7301 to have limited the President's authority in this field to workplace conduct. But if the court is wrong and the President indeed has authority over the conduct of civilian federal employees in general—in or out of the workplace—"what is the logical stopping point of that power?" *Kentucky v. Biden*, No. 21-6147, 2022 WL 43178, at *15 (6th Cir. Jan. 5, 2022). Is it a "*de facto* police power"? *Id.* The government has offered no answer—no limiting principle to the reach of the power they insist the President enjoys. For its part, this court will say only this: however extensive that power is, the federal-worker mandate exceeds it.

### b. APA review

The plaintiffs argue that even if the President had the authority to issue the federal-worker mandate, the agencies have violated the APA by arbitrarily and capriciously implementing it. Dkt. 3 at 16–25. While the court need not reach this question, as it has already determined the federal-worker mandate exceeds the President's authority, the government correctly argues

that, if the President had authority to issue this order, this case seems to present no reviewable agency action under the APA. The Supreme Court held in *Franklin v. Massachusetts* that executive orders are not reviewable under the APA. 505 U.S. 788, 800–01 (1992). But the plaintiffs seem to argue that *Franklin* no longer applies once an agency implements an executive order—the order itself is then vulnerable to review. That is not the law. To hold otherwise would contravene the thrust of the Supreme Court's holding in *Franklin* by subjecting almost every executive order to APA review.

The plaintiffs are right to argue that agency denials of religious or medical exemptions, additional vaccination requirements by agencies apart from the federal-worker mandate, or other discretionary additions to the executive order would likely be reviewable under the APA's arbitrary-and-capricious standard. But the plaintiffs have not challenged any discretionary agency action—only the implementation of the federal-worker mandate itself.[6] Accordingly, there is nothing for the court to review under the APA.

---

[6] The court is convinced that the best reading of the APA in light of *Franklin* is to allow APA review only when the challenged action is discretionary. *See* William Powell, *Policing Executive Teamwork: Rescuing the APA from Presidential Administration*, 85 MO. L. REV. 71, 121 (2020).

### 3. Balance of equities and the public interest

Finally, the court weighs the plaintiffs' interest against that of the government and the public. When the government is the party against whom an injunction is sought, the consideration of its interest and that of the public merges. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The government has an undeniable interest in protecting the public against COVID-19. Through the federal-worker mandate, the President hopes to slow the virus's spread. But an overwhelming majority of the federal workforce is already vaccinated. According to a White House press release, even for the federal agency with the lowest vaccination rate, the portion of employees who have received at least one COVID-19 vaccine dose exceeds 88 percent. OFF. OF MGMT. & BUDGET, *Update on Implementation of COVID-19 Vaccination Requirement for Federal Employees* (Dec. 9, 2021).[7] The government has not shown that an injunction in this case will have any serious detrimental effect on its fight to stop COVID-19. Moreover, any harm to the public interest by allowing federal employees to remain unvaccinated must be balanced against the harm sure to come by terminating unvaccinated workers who provide vital services to the nation.

---

[7] *Available at* https://www.whitehouse.gov/omb/briefing-room/2021/12/09/update-on-implementation-of-covid-%e2%81%a019-vaccination-requirement-for-federal-employees/.

While vaccines are undoubtedly the best way to avoid serious illness from COVID-19, there is no reason to believe that the public interest cannot be served via less restrictive measures than the mandate, such as masking, social distancing, or part- or full-time remote work. The plaintiffs note, interestingly, that even full-time remote federal workers are not exempt from the mandate. Stopping the spread of COVID-19 will not be achieved by overbroad policies like the federal-worker mandate.

Additionally, as the Fifth Circuit has observed, "[t]he public interest is also served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions." *OSHA*, 17 F.4th at 618. The court added that the government has no legitimate interest in enforcing "an unlawful" mandate. *Id*. All in all, this court has determined that the balance of the equities tips in the plaintiffs' favor, and that enjoining the federal-worker mandate is in the public interest.

## IV

## Scope

The court is cognizant of the "equitable and constitutional questions raised by the rise of nationwide injunctions." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 601 (2020) (Gorsuch, J., concurring); *see also Trump*

v. *Hawaii*, 138 S. Ct. 2393, 2428–29 (2018) (Thomas, J., concurring). But it does not seem that tailoring relief is practical in this case. The lead plaintiff, Feds for Medical Freedom, has more than 6,000 members spread across every state and in nearly every federal agency, and is actively adding new members. The court fears that "limiting the relief to only those before [it] would prove unwieldy and would only cause more confusion." *Georgia*, 2021 WL 5779939, at *12. So, "on the unique facts before it," the court believes the best course is "to issue an injunction with nationwide applicability." *Id.*

\* \* \*

The court GRANTS IN PART and DENIES IN PART the plaintiffs' motion for a preliminary injunction. Dkt. 3. The motion is DENIED as to Executive Order 14042, as that order is already subject to a nationwide injunction. The motion is GRANTED as to Executive Order 14043. All the defendants, except the President, are thus enjoined from implementing or enforcing Executive Order 14043 until this case is resolved on the merits. The plaintiffs need not post a bond.

Signed on Galveston Island this 21st day of January, 2022

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE